## Davis *v.* The State.

1. The question raised by the demurrer in this case is ruled in *Mathis* v. *The State*, this term.
2. A druggist who has no license to sell spirituous liquors cannot knowingly sell them for use as a beverage, even after they are compounded with other ingredients into medicines; and where the evidence clearly shows that he must have known the pur-

chasers bought them for consumption as a beverage and for the sake of their intoxicating property, it was not reversible error for the court to charge the jury that "the party selling must use an ordinary degree of caution and diligence in ascertaining for what purpose they [the medicines] are wanted."

3. The evidence was sufficient to warrant the verdict, and there was no error in overruling the *certiorari.*

November 20, 1893.

*Certiorari.* Before Judge JENKINS. Putnam superior court. September term, 1893.

H. A. JENKINS and HARRISON & PEEPLES, for plaintiff in error. H. G. LEWIS, solicitor-general, by HINES, SHUBRICK & FELDER and J. S. TURNER, *contra.*

LUMPKIN, Justice.

1. The question raised by the demurrer in this case was discussed and ruled in the case of *Mathis* v. *The State*, this term. *Ante*, 38.

2. A druggist who has no license to sell spirituous liquors certainly cannot knowingly sell them for use as a beverage, notwithstanding they may have been compounded with other ingredients into medicines. To do so is plainly and squarely a violation of our statutes prohibiting the sale of such liquors in certain jurisdictions. It is evident that in such cases, treating the liquors as medicines is a mere pretense to evade the law. The evidence in this case shows that parties were in the habit of going to the drug-store of the accused and buying "tincture of ginger" and "cherry bitters," composed largely of alcohol, at ten cents a drink; and also, by the bottle, and then treating each other out of the quantity purchased. It must therefore have been obvious to the accused that these parties were not purchasing these compounds in good faith as medicines. Certainly it would be a singular coincidence if several persons should become similarly sick at the same time, and require precisely the same treatment for their ailments; and the idea of sick people going to a drug-store

in crowds and treating each other to a medicine at ten cents a drink is unique in the extreme. Among other things, the court charged the jury that "the party sell-ing must use an ordinary degree of caution and diligence in ascertaining for what purpose they [the medicines] are wanted." Abstractly, this may not be an entirely correct presentation of the law applicable; but if erro-neous, it would not, in the present case, require or even justify the granting of a new trial, because it is plainly apparent that the accused, under the pretense of selling medicines, was really selling intoxicating liquors, and it is quite certain that he knew the purchasers were buy-ing and using the liquors, not in good faith for use as medicines, but solely for the sake of their intoxicating properties. This being so, his conduct amounted to an open and inexcusable violation of the law prohibiting the sale of spirituous liquors without a license. The charge complained of was certainly as favorable to him as he had any right to expect under the evidence, and even if erroneous, did him no injury.

3. The evidence disclosed the above state of facts be-yond question. The verdict of guilty was unquestion-ably proper, and the court below did right in declining to sustain the *certiorari*.     *Judgment affirmed.*